## No. 5721.

### FORE & HENDERSON *v.* HITSON & REID.

1. PARTNERSHIP.—A bond executed in a partnership name which does not pertain to the ordinary business of the firm, or in settling up its affairs, which is executed by one member of the firm without the knowledge or consent of the others, and when nothing has been done by the other partners that would estop them from denying the authority, will not bind the firm. A subsequent ratification will supply authority.

2. SAME.—When the firm name is used as surety for a third person the presumption prevails that such use is outside of the firm business.

3. CHARGE OF COURT.—See opinion for charge of court regarding the liability of a partnership *held* not applicable to facts stated in the opinion and misleading.

APPEAL from Tarrant. Tried below before the Hon. R. E. Beckham.

*Hunter & Stewart,* for appellants, cited White v. Tudor, 24 Texas, 461; 13 American Decisions, 109, and notes; 3 Kent's Commentaries, 72, 73; 5 Georgia, 166; Chitty on Contracts, 252, note 1; Ausly v. Mock, 8 Alabama, 444; Corn v. Forney, 3 Watts and S., Pennsylvania, 351, 1 Addison on Contracts, section 494, at bottom of page 739, citing Wilde v. Clarkson, 6 Term Reporter, 304; Farrar v. United States, 5 Peters, 373.

*R. M. Wynne* and *A. M. Carter,* for appellee, cited Sweester v. French, 48 American Decisions, 666, and authorities cited in note, page 668; Andrews v. Planter's Bank, 45 American Decisions, 301; Bigelow on Estoppel, page 469, 470; 1 Parsons on Contracts, seventh edition, bottom page 208, 210, and note; Revised Statutes, articles 2976, 2978; 1 Sutherland on Damages, 596, 598.

WALKER, ASSOCIATE JUSTICE. It appears that early in 1883, Fore, Morphy & Henderson were partners in a contract to deliver cattle to the Stone Cattle and Pasture Company. The cattle purchased for the contract were thrown back upon them, and were sold to The Texas Investment Company in July, 1883.

From that time until the date of the bond sued on, May 27, 1884, the parties had transaction together in winding up their old matters. They had debts to settle and had paper of The Texas Investment Company to use to meet and settle their debts.

In July, 1884, an organization of The Texas Investment Company, limited, was made, which assumed the indebtedness of the original company including a large debt to Fore, Morphy & Henderson on account of the purchase of cattle the year before. In the new company, Fore, Morphy & Henderson took twenty thousand dollars in stock; paid for in their note for five thousand dollars signed in the firm name by Morphy, by consent of Fore and Henderson, and by fifteen thousand dollars in paper of the company surrendered by said Fore, Morphy & Henderson. In handling the paper of The Texas Investment Company and of The Texas Investment Company, limited, which Fore, Morphy & Henderson held and used in settling up their debts made in their cattle enterprise of the previous year, the firm name was signed as it became necessary by both Morphy and Henderson. It seems that in May, 1884, Morphy used the firm name, "Fore, Morphy & Henderson," by signing it as surety to a cattle contract made by The Texas Investment Company, limited, with the Independence Cattle Company of Kansas City, for delivery of eight thousand head of cattle. Of this, Fore and Henderson knew nothing until several months after it was done. Morphy was president of The Texas Investment Company, and of its successor. Reed, of Reed & Hitson, was vice president of the company.

May 27, 1884, Morphy, president of the company, made the contract and bond sued on for the delivery of one thousand five hundred head of cattle to said Reed & Hitson and to the bond made by Morphy he signed as security the firm name, "Fore, Morphy & Henderson." Morphy made no declarations to Reed, who acted in the business for Reed & Hitson as to having authority to sign the name of the partnership. It appeared that the partnership had been formed only to fill the contract for cattle with the Stone Cattle and Pasture Company, and its continuance was only in settling up the debts of the concern made in obtaining funds and debts made in that enterprise. Morphy advised, and succeeded in making the firm take, twenty thousand dollars of stock in the new company, paying for it as before stated. Under this joint holding of this stock, it seems

that Morphy concluded that he had the right to use at pleasure in any way the names of Fore and Henderson.

August 5, 1884, Hitson & Reed brought suit against The Texas Investment Company, limited, as principal, and against J. P. Smith and Fore, Morphy & Henderson as sureties upon their bond, to recover money alleged to have been paid by plaintiffs on the contract made with said Investment Company for the delivery of certain cattle described, and which it was alleged the Investment Company had failed to deliver. (The petition set out details about which there is no question.)

The defendants Fore and Henderson separately pleaded non est factum, that there was no such partnership as Fore, Morphy & Henderson. The pleadings being verified by oath of each. In replication, plaintiff alleged that the defendants Fore and Henderson, by their course of dealing, had misled plaintiffs as to Morphy's authority to act; that the defendants had ratified the act of Morphy; and that the reorganization of the company, limited, was made for the purpose of providing funds and means to pay the debts of the old company, and that the taking of stock by Fore, Morphy & Henderson was in an effort to secure their debts on the company, setting out details and charging that Morphy had special authority to make such contracts, and had done so with the knowledge and ratification of the other defendants, Fore and Henderson.

There was much testimony adduced, Morphy, Smith, Henderson, Fore, plaintiff Reed and others having been examined. Both Fore and Henderson testified that they never knew before suit was brought that Morphy was using their names as sureties upon the contract sued on, or any other. Each denied Morphy's authority in signing the bond.

1. The court instructed the jury "that a partnership can only exist as between the parties themselves, in pursuance of an agreement to which the minds of all have assented, but that when created each partner has full power and authority to bind all the partners by his acts or contracts in relation to the business of the partnership; and as between the firm and third parties dealing with them in good faith, it is of no consequence whether the partner is acting in good faith with his copartners or not, provided the act done is within the scope of partnership business, and professedly for the firm; but the relation of the partnership confers no authority on one party to bind the others, except as to transactions within the scope of the partner-

ship business. And if you believe that said Fore, Morphy & Henderson were partners, yet if you believe that the partnership existing between them was entered into for the sole purpose of buying and selling cattle, then such partnership relation could not authorize either party to sign the firm name as sureties on the bond of a third party; and if you find that the bond sued on was signed by Morphy without the consent of said Fore and Henderson, and without other authority from them, then you should find in favor of said Fore and Henderson, unless you should further find that said Fore and Henderson, after being informed that the bond was so signed by Morphy, consented to the same.    *    *    *    *

2. "You are further instructed that a partnership, as such, may engage in a transaction outside of its regular business, if all the partners agree thereto, and if they so engage in other transactions, the acts of one partner done in respect to such transaction will bind the firm; and, if you believe from the evidence that said Fore, Morphy & Henderson were partners, and that the purpose of the partnership was to buy and sell cattle, yet if you believe from the evidence that said Fore and Henderson authorized said Morphy to sign the firm name to this bond sued on, then each of them so agreeing to the signing of the same would be bound by the acts of said Morphy.

3. "You are further instructed that if you believe from the evidence that prior and up to the time of the execution of the bond sued on, the said Fore and Henderson had voluntarily and knowingly held said Morphy out to the world as authorized to sign contracts similar to the one in question, and had knowingly so conducted themselves to reasonably justify the public generally, and those dealing with them, in believing that said Morphy was authorized to sign their firm name to such contracts, and that the plaintiffs accepted said bond, believing that said Morphy had authority to sign the same, then said defendants would be bound by the acts of said Morphy.

4. "To entitle the plaintiffs to recover as against either Fore or Henderson, you must believe from the evidence that they authorized said Morphy to sign their firm name to said bond, or that they knowingly and voluntarily held the said Morphy out to the world as authorized by them to sign said contract, or that after being informed of said Morphy's act of signing the same that they assented thereto; unless you so believe from the evidence, you should find for said Fore and Henderson.

5. "If you believe that either of said Fore or Henderson authorized said Morphy to sign said bond, or that either of them so held said Morphy out to the public as being authorized to make such contracts, or that either of them after being informed of the fact of their firm name being signed to the bond, assented thereto, and that the other did not so act, then the one so acting (if either did) would be liable on said bond; and in that event you should find for the plaintiff as against the one so authorizing or ratifying the act of said Morphy, and not as to the other."

Upon a verdict, judgment was rendered against the Investment Company for the amount sued for, and against J. P. Smith and Fore, Morphy & Henderson, sureties, for the amount of the bond. The defendants Fore and Henderson appeal. The question raised is, are they liable upon the bond?

The third, fourth and fifth paragraphs of the charge are complained of in the first assignment of error, "because such charge was error, in the absence of testimony to the acts or declarations on the part of these defendants operating as an estoppel. The repetition gave it undue prominence, and was calculated to unduly influence the jury. It was in effect a charge upon the weight of evidence, in assuming that there was evidence on the subject, and calling attention of the jury to it."

Of the charge as a whole we find nothing subject to special criticism, had it been applicable to the testimony. Its repeated suggestion of Fore and Henderson holding Morphy out to the public as their partner, and authorized to sign such contracts, probably had "the effect to give to the principles thus enunciated an undue prominence and importance in the minds of the jury, and thus mislead them in the application of the law to the evidence." (Powell v. Messmer, 18 Texas, 406.) The two instances shown (the bond in suit and one other), in which Morphy is shown to have used the firm name as security for third persons, both unknown to his partners, was not a course of business from which any authority could reasonably have been inferred against the partners.

The third and fourth assignments of error call in question the sufficiency of the testimony.

Upon study of the record we find in it no testimony at all to authority by Fore and Henderson to Morphy to sign their names as sureties to the bond or to use as basis of credit for the Invest-

ment Company, the firm name, "Fore, Morphy & Hendesorn." The bond was not made in the business of the firm or in settling up its old business. No acts are shown of Henderson and Fore or either of them in ratification of Morphy's attempt to bind them; they never knew of it until after suit and could not ratify it without knowledge of it. No act or course of business on their part appears in the record from which an estoppel can be inferred; and there is no want of knowledge of want of authority on part of Morphy by the obligees Reed & Hitson.

It is a well recognized rule that when one member of a firm uses the firm name outside of the business of the firm, and it is so shown, that it then devolves upon the holder of such obligation to show authority for such use, which may be by direct or circumstantial evidence; or a subsequent ratification will supply authority. (10 Texas, 195; 18 Texas, 407; 25 Texas Supp., 117; 5 Conn., 574; 13 Am. Dec., 109; 7 Smedes & Marsh., 192; 45 Am. Dec., 301; 2 Cush., 209; 48 Am. Dec., 666.) It also appears well settled that where a firm name is used as surety for a third person the presumption is that such use of the firm name is outside of the firm business, and that in such case the burden of proving assent, estoppel or ratification lies upon the person asserting the liability of the parties not acting in the signing as security.

We do not believe that justice was reached on the trial. The charge of the court was not applicable to the testimony, and so was misleading. The testimony did not support the verdict. A new trial should have been granted.

For the refusal to grant a new trial, the judgment below is reversed and cause remanded.

*Reversed and remanded.*